1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREW DAYNE SOSA,                          Case No.  25-cv-01310-WHO

8                        Plaintiff,

**ORDER GRANTING MOTIONS TO**
9         v.                                      **DISMISS**

10   AT&T, et al.,                                Re: Dkt. Nos. 57, 59

11                      Defendants.

12         Plaintiff Andrew Sosa filed suit against defendants Warner Brothers and YouTube for their

13   conduct in taking down Sosa's video review of a Batman movie because it violated Warner

14   Brothers' copyrights.  His sole claim against YouTube under the Unfair Competition Law

15   ("UCL," California Business & Professions Code § 17200 *et seq.*)) is preempted and YouTube is

16   otherwise immune under Section 230 of the Communications Decency Act, 47 U.S.C. § 230,

17   requiring dismissal.  Sosa makes the same claim against Warner Brothers, which must be

18   dismissed, but also asserts under Digital Millenium Copyright Act ("DMCA," 17 U.S.C. § 512(f))

19   that its takedown notice was improper because his review was either did not violate any of Warner

20   Brothers' copyrights or was obviously fair use.  He is missing facts that would make the latter

21   claim plausible.  As discussed below, YouTube's motion to dismiss is GRANTED without leave

22   to amend, Sosa's UCL cause of action against Warner Brothers is DISMISSED without leave to

23   amend, and his DMCA claim is DISMISSED with leave to amend.

24                                    **BACKGROUND**

25         Mr. Sosa posted a video review of a Batman movie on YouTube.  First Amended

26   Complaint ("FAC," Dkt. No. 53), pg. 10, ¶ 18.  He alleges that Warner Brothers issued a "false"

27   takedown notice ("Notice") to YouTube, asserting that Sosa's review video infringed its

28   copyrights.  FAC at pgs. 9-10, ¶¶ 18, 19, 21.  The Notice was false, according to Sosa, because the

1   video was a review of a movie, did not copy any materials copyrighted by Warner Brothers, and

2   even if so, was obvious fair use. *Id.*

3       YouTube, responding to the Notice, took down the video. FAC at pgs. 19-20. And

4   Warner Brothers withdrew the Notice. FAC pg. 20, ¶ 17(c). But, according to Sosa, YouTube

5   failed to reasonably and promptly reinstate his video, and when the video was reinstated it was not

6   given the same priority as it would have had if it had not been taken down in the first place. FAC

7   at pgs. 19-20.

8       Based on these allegations, Sosa asserts causes of action against Warner Brothers

9   Entertainment, Inc. for: (1) violation of the DMCA, 17 U.S.C. § 512(f), for knowing

10  misrepresentations in a DMCA copyright infringement notice; and (2) violation of the UCL

11  because the Notice was both unlawful under the DCMA section 512(f) and unfair because Warner

12  Brothers proceeded with the Notice without consulting with Sosa and used its leverage with

13  YouTube to "prioritize" the takedown Notices over the rights of content creators. FAC, COA I &

14  II. Separately, Sosa sues YouTube for violation of the UCL, asserting that YouTube: (1) unfairly

15  failed to process and respect Sosa's counternotice; (2) failed to "clear" Sosa of infringement in a

16  reasonable or timely manner; (3) failed to disclose information to Sosa regarding the Notice; (4)

17  failed to reinstate the Video "on the same footing" where it would have been absent the takedown;

18  and (5) prioritized Warner Brother's assertion of rights over content creators' assertions of rights.

19  FAC, COA III.[1]

20  **LEGAL STANDARD**

21      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

22  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

23  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

24  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

25  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

26

27  ───────────────
    [1] This action was initially filed pro se in Texas state court. Defendants removed the case to the
    Northern District of Texas and successfully moved to transfer the case to this Court. *See* Dkt.
28  Nos. 1, 13. Counsel entered an appearance on behalf of Sosa after the case was transferred to this
    District. Dkt. No. 17.

United States District Court
Northern District of California

1   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

2   omitted). This standard is not akin to a probability requirement, but there must be "more than a

3   sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require

4   "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

5   relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

6        In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

7   court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

8   plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court

9   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

10  fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

11  2008).

12       If the court dismisses the complaint, it "should grant leave to amend even if no request to

13  amend the pleading was made, unless it determines that the pleading could not possibly be cured

14  by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making

15  this determination, the court should consider factors such as "the presence or absence of undue

16  delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

17  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

18  *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

19                              **DISCUSSION**

20  **I.    YOUTUBE'S MOTION TO DISMISS**

21       Sosa's only claim asserted against YouTube is under the UCL. There are a number of fatal

22  problems with this claim.

23       First, "17 U.S.C. § 512(f) preempts state law claims based on DMCA Takedown

24  Notifications." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011

25  WL 2690437, at *3 (N.D. Cal. July 8, 2011) (collecting cases dismissing state law claims,

26  including UCL claims, as preempted by DMCA and Copyright Act); *see also Hyphy Music, Inc. v.*

27  *Sena*, No. 1:21-CV-00216-JLT-HBK, 2025 WL 842893, at *9 (E.D. Cal. Mar. 18, 2025) ("Courts

28  in the Ninth Circuit have held that 17 U.S.C. § 512(f) of the DMCA preempts state law claims

United States District Court
Northern District of California

1   based on DMCA takedown notifications because the rights asserted under state law are wholly

2   encompassed by the Copyright Act."); *Cinq Music Grp., LLC v. Create Music Grp., Inc*., No.

3   222CV07505JLSMAR, 2023 WL 4157446, at *2 (C.D. Cal. Jan. 31, 2023) ("Courts in the Ninth

4   Circuit have regularly held that the DMCA preempts state law claims arising out of submission of

5   takedown notices"). Sosa's sole claim against YouTube is based *only* on YouTube's handling of

6   Warner Brothers' takedown Notice and Sosa's Counternotice under the DMCA. That claim is

7   preempted.

8       Second, courts have consistently held that online platforms are not liable for their decisions

9   to publish, remove, or allow third-party content under Section 230 of the Communications

10  Decency Act. *See Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1099 (9th Cir. 2019)

11  (holding that algorithmic recommendations are protected by Section 230); *Barnes v. Yahoo!, Inc*.,

12  570 F.3d 1096, 1103 (9th Cir. 2009) (failure to remove content cannot support tort liability given

13  Section 230). The only conduct Sosa complains of by YouTube is YouTube's decisions regarding

14  whether to takedown his video, when to put his video back up, and what ranking to give his video.

15  *See generally* FAC. These are "quintessential" publishing decisions giving YouTube immunity to

16  state law tort claims under Section 230. *Doe v. MySpace, Inc*., 528 F.3d 413, 420 (5th Cir. 2008)

17  ("decisions relating to the monitoring, screening, and deletion of content [are] actions

18  quintessentially related to a publisher's role") (internal quotation marks omitted).

19      Third, the only specific relief Sosa seeks from YouTube under the UCL is "monetary."

20  *See* FAC pg. 21 (identifying "lost money" from the "loss of monetized views," loss of "returned

21  views," loss of video on platform for a period of time, and loss of "good will" all of which "are

22  monetary in nature"). However, under the UCL the only monetary relief available is

23  restitutionary, providing *only* for return of money or property improperly acquired by the

24  defendant *from* the plaintiff. *See Kwikset Corp. v. Super. Ct*., 51 Cal. 4th 310, 336 (2011) (under

25  the UCL, "[a] restitution order against a defendant thus requires both that money or property have

26  been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the

27  other."); *see also Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1149 (2003)

28  ("The object of restitution is to restore the status quo by returning to the plaintiff funds in which

United States District Court
Northern District of California

he or she has an ownership interest."). There are no allegations that Sosa paid anything to YouTube that could justify an award of restitution.

Accordingly, the sole claim against YouTube is DISMISSED.  While I would normally give a plaintiff leave to amend, because this claim is both preempted and YouTube is immune from liability for its publishing decisions, this claim is DISMISSED WITHOUT LEAVE TO AMEND.

## II.    WARNER BROTHERS' MOTION TO DISMISS

Warner Brothers moves to dismiss the DMCA and UCL claims, and separately moves to strike the UCL claim under California's Anti-SLAPP statute.  Cal. Code Civ. Proc. § 425.16 *et seq*.  As explained below, the motion to dismiss is granted.  The UCL claim is dismissed without leave to amend as it is preempted, but I will give Sosa the opportunity to reallege the DMCA claim.[2]

### A.    UCL Claim

Sosa's UCL claim against Warners Brothers must be dismissed for the reasons discussed above with respect to YouTube.  The *only* basis of this UCL claim is Warner Brother's DMCA takedown notice.  *See Cinq Music Grp., LLC v. Create Music Grp., Inc*., 2023 WL 4157446, at *3 (C.D. Cal. Jan. 31, 2023) ("Cinq Music does not dispute that all of its claims are based on allegedly improper takedown notices made by Create Music. [] And those takedown notices are covered by the DMCA. Accordingly, Cinq Music's only remedy is that specified in section 512(f); the state law causes of action.").[3]  The UCL claim is DISMISSED without leave to amend.

### B.    DMCA Claim

Sosa alleges Warner Brothers' violated section 512(f) of DMCA, prohibiting knowing

---

[2]  Because I dismiss the only state law claim asserted against Warner Brothers without leave to amend, I will not address the separate motion to strike.  *Next Vietnam Projects Found., Inc. v. Koster Films, LLC*, 751 F. Supp. 3d 1005, 1010 (C.D. Cal. 2024) ("The Court analyzes and grants Plaintiff's Motion under Rule 12(b)(6). Accordingly, it need not address Plaintiffs' arguments under Cal. Civ. Proc. Code § 425.16.").

[3] The UCL claim against Warner Brothers suffers also from seeking "monetary" remedies against Warner Brothers that are not available as restitution.  *See supra* at 4.

1    misrepresentations about alleged copyright infringements or related activity in DMCA notices.[4]

2    Sosa contends that Warner Brothers should have known that Sosa's video review of the Batman

3    movie did not copy any Warner Brothers' protected content, and even if some copyrighted

4    material was used in Sosa's video, the limited use was obvious fair use.  FAC pgs. 9-10,  ¶¶ 17,

5    18.

6           The Ninth Circuit has recognized that section 512(f) imposes a burden on copyright

7    holders to consider fair use prior to sending takedown notices.  *Lenz v. Universal Music Corp.*,

8    815 F.3d 1145, 1157 (9th Cir. 2016) ("Copyright holders cannot shirk their duty to consider—in

9    good faith and prior to sending a takedown notification—whether allegedly infringing material

10   constitutes fair use, a use which the DMCA plainly contemplates as authorized by the law.").  The

11   Ninth Circuit has also explained that the knowing misrepresentation standard under section 512(f)

12   is subjective, not objective.  *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th

13   Cir. 2004).  Meaning, a "copyright owner cannot be liable simply because an unknowing mistake

14   is made, even if the copyright owner acted unreasonably in making the mistake. *See* § 512(f).

15   Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part

16   of the copyright owner."  *Id.* at 1005.  Accordingly, to state a claim under section 512(f), a

17   plaintiff "must allege (1) a material misrepresentation in a takedown notice that led to a takedown,

18   and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Ent. Ltd. v.*

19   *Babybus (Fujian) Network Tech. Co*., 2022 WL 580788 (N.D. Cal. Feb. 25, 2022).

20          Warner Brothers moves to dismiss the DMCA claim because there is no dispute that

21   Sosa's video posted to YouTube used an official movie poster and characters from a Batman

22   _____

23   [4] 17 U.S.C. § 512 provides in relevant part:
              (f) Misrepresentations.--Any person who knowingly materially misrepresents

24       under this section--
                    (1) that material or activity is infringing, or

25                  (2) that material or activity was removed or disabled by mistake or
                    misidentification,

26       shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged
         infringer, by any copyright owner or copyright owner's authorized licensee, or by a service

27       provider, who is injured by such misrepresentation, as the result of the service provider
         relying upon such misrepresentation in removing or disabling access to the material or

28       activity claimed to be infringing, or in replacing the removed material or ceasing to disable
         access to it.

United States District Court
Northern District of California

1   movie that are subject to Warner Brothers' copyrights.  Mot. (Dkt. No. 59) at 4-5; *see also* Reply

2   (Dkt. No. 76) at 6 (attaching screen shots from Sosa's video and the official Batman movie

3   poster).  It argues that given Sosa's use of those protected materials in his video, Sosa cannot show

4   that Warner Brothers sent the takedown Notice based on a knowing misrepresentation of copyright

5   infringement.  In Opposition, Sosa argues that he did not use any copyrighted clips of the Batman

6   movie but does not address his purported use of a copyright protected poster or characters.  Oppo.

7   (Dkt. No. 6) at 6.  Sosa also contends – and asserts in his FAC – that any use of copyrighted

8   materials in his movie review was so blatantly and obviously fair use that Warner Brothers must

9   have known its takedown Notice was a knowing misrepresentation.  Oppo. at 6; FAC pgs. 11-12,

10  ¶¶ 25 & 26.

11      The Ninth Circuit held in *Lenz*, 815 F.3d at 1157, that copyright holders must consider "in

12  good faith" fair use before sending a takedown notice.  *See also Ouellette v. Viacom Int'l, Inc*., No.

13  CV 10-133-M-DWM-JCL, 2012 WL 850921, at *4 (D. Mont. Mar. 13, 2012), *report and*

14  *recommendation adopted*, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703 (D. Mont. Apr. 25,

15  2012), aff'd, 671 F. App'x 972 (9th Cir. 2016) ("properly pled allegations under 17 U.S.C. §

16  512(c)(3)(A)(v) and (f) which plausibly suggest that a 'copyright owner acted in bad faith by

17  issuing a takedown notice without proper consideration of the fair use doctrine' may be sufficient

18  to state a misrepresentation claim.").  Sosa asserts that he has plausibly alleged that Warner

19  Brothers failed to adequately consider fair use and, indeed, had the ulterior goal of taking down his

20  video because it contained spoilers, not because it infringed on Warner Brothers' copyrights.

21  Oppo. at 6; FAC pgs. 11-12, ¶¶ 25 & 26.

22      The facts supporting the "knowing misrepresentation" requirements are at pages 11-12 of

23  the FAC in paragraphs 25 & 26.  There, Sosa alleges:

24          25.  Warner and the Warner Does had actual knowledge that their
            assertions were false.  Specifically, a Warner agent or contractor
25          admitted in an email to Mr. Sosa that the reason for the takedown was
            spoilers, not claimed infringement, so the Warner and Warner Does
26          didn't believe in the veracity of their claims of infringement. Indeed,
            spoilers – that do not include copyrighted expression from the movie
27          – cannot constitute infringement.

28          26.  Moreover, Warner and the Warner Does's knowledge of

United States District Court
Northern District of California

> falsehood is shown by the fact that they later withdraw the notice of
> claimed infringement – conceding that it was not accurate and that it
> was not infringement.

In support of his theory of knowing misrepresentation, Sosa relies on a February 28, 2022, communication following the takedown of his video between Sosa and Susan Clark whose email is susanc@legionadvertising.com.  Mot, Ex. A, Dkt. 59-1.[5]  Sosa argues that this exchange supports his allegation that Warner Brothers knowingly misrepresented the copyright infringement in an effort prevent his videos with spoilers from being available.

Warner Brothers replies that this communication cannot plausibly support a knowing misrepresentation claim for two reasons.  First, the communication occurred *after* the Notice was issued; the relevant question under section 512(f) is Warner Brothers' belief at the time the Notice was issued, not after the Notice was issued.  Warner Brothers argues that this post-takedown communication cannot establish what Warner Brothers knew or thought at the time of the takedown, which is the critical issue.

Second, Warner Brothers asserts that the communication does not plausibly support the allegation that it took down the video to prevent spoilers.  In the communication, Sosa asks for help because Warner Brothers took down his video despite it being all his content, and noted "[i]f it's the spoilers then I don't mind not posting them, but my channel is being hurt by a video takedown & I could lose my channel – Andew Sosa."  Susan Clarke responds "[i]f you had spoilers, then yes it would [sic] taken away." Dkt. No. 59-1, Ex. A.  Even if Clarke was an agent of Warner Brothers, an issue Warner Brothers does not concede, the discussion regarding the loss of a *channel* is not relevant to why Sosa's *video* was taken-down days earlier.  Clarke's response cannot be plausibly alleged to show Warner Brothers' *knowledge* because Clarke does not seem to know whether there were spoilers in Sosa's video.

I have concerns with both Sosa's DMCA 512(f) claim *and* Warner Brothers' defense in its

---

[5] Warner Brothers attaches this communication to its motion, arguing I can review and rely on it as it was attached to a prior pleading by Sosa and through the doctrine of incorporation as Sosa's expressly relies on the communication in support of his DMCA claim.  *See* Dkt. No. 67-1, Ex. A.  In opposition, Sosa does not object to my consideration of the communication and I find it has been incorporated into the FAC by Sosa's reliance on it.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    motion to dismiss.  Neither side addresses what copyrighted material the DMCA Notice identified

2    as being infringed by Sosa's video.  Was it the movie, the poster, or the characters, or did the

3    DMCA Notice not identify with specificity the copyrighted material allegedly infringed by Sosa's

4    video?  The content of the DMCA Notice matters because what was represented on that Notice is

5    critical to the question of whether there was a knowing misrepresentation under section 512(f).

6    Neither side attaches the DMCA takedown Notice and Warner Brothers' counsel admitted during

7    the hearing on this motion that counsel had not seen the actual DMCA Notice.  Without attaching

8    the DMCA Notice or attesting to its contents – which can be taken into account on a motion to

9    dismiss under the doctrine of incorporation – it is not clear that Warner Brothers can assert a facial

10    challenge to the 512(f) claim.

11          Second, assuming that Sosa's video did not infringe Warner Brothers' copyrighted

12    material – either because there was no copying of protected content or because any use was fair

13    use – Sosa needs to add facts and plausible allegations regarding what Warner Brothers should

14    have known at the time to plausibly allege a knowing misrepresentation under section 512(f).  The

15    spoiler allegations contained in the current FAC (pgs. 11-12, ¶¶ 25-27) are not sufficient

16    considering unopposed judicial notice of the contents of the communication that was attached to

17    prior versions of Sosa's complaint.  *See* Dkt. No. 59-1, Ex. A.  The identified communication does

18    not plausibly support Sosa' claim that the Notice was issued because of spoilers in Sosa's video

19    and not because of copyright infringement.

20          However, as there may be additional contemporaneous communications regarding why

21    Warner Brothers issued the Notice (from YouTube or Warner Brothers) that could plausibly

22    support Sosa's allegations, Sosa is given one last attempt to amend.  Similarly, Sosa may be able

23    to add allegations regarding Warner Brothers' approach to protecting its copyrighted materials, or

24    allegations regarding the processes or algorithms used by Warner Brothers to identify

25    infringements that result in DMCA notices, or allegations regarding efforts to protect Batman-

26    related content from infringement, that could plausibly support his claim that Warner Brothers

27    failed to consider fair use before issuing the Notice.  *See, e.g., ENTTech Media Grp. LLC v.*

28    *Okularity, Inc*., No. 2:20-CV-06298-JWH-EX, 2021 WL 916307, at *4 (C.D. Cal. Mar. 10, 2021)

1    (plaintiff "adequately pleaded its DMCA claim based upon [] allegations that Okularity

2    'automatically generates [and submits] DMCA notices without considering ... fair use'" and

3    alleging every takedown notice contained the same recitation of fair use, implying form used and

4    not a good faith determination); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th

5    Cir. 2016) (at summary judgment, plaintiff needs to show that copyright holder "(1) subjectively

6    believed there was a high probability that the video constituted fair use, and (2) took deliberate

7    actions to avoid learning of this fair use"); *Lenz v. Universal Music Corp.*, No. 5:07-CV-03783-JF,

8    2013 WL 271673, at *4 (N.D. Cal. Jan. 24, 2013) ("Lenz asserts that this statement was a

9    knowing, material misrepresentation under § 512(f) because, given its procedures for reviewing

10   videos before requesting that they be removed, Universal could not have formed a good faith

11   belief that Lenz's video did not constitute fair use").[6]

12                                          **CONCLUSION**

13          YouTube's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.  The UCL

14   claim against Warner Brothers is DISMISSED WITHOUT LEAVE TO AMEND.  The DMCA

15   claim against Warner Brothers is DISMISSED with leave to amend.  Sosa is given one last

16   attempt to amend to state an actionable DMCA claim under section 512(f).  Any further amended

17   complaint is due within twenty (20) days of the date of this Order.

18          **IT IS SO ORDERED.**

19      Dated: December 23, 2025

20

21

22                                          _____
                                            William H. Orrick
23                                          United States District Judge

24

_____

25   [6] Warner Brothers also argues that Sosa has failed to adequately allege a sufficient injury under
     section 512(f) stemming from its takedown Notice.  Warner Brothers points out that Sosa's FAC
26   fails to allege facts regarding that his video was taken down, and if it was, how long it was down
     for.  Reply at 9.  I disagree.  Sosa alleges that his video was taken down as a result of Warner
27   Brothers' Notice. FAC pg. 11, ¶ 23 (Warner's and the Warner Does' takedown request was
     material both in the sense that it caused YouTube to remove the video at issue and in the sense that
28   it was not a small error").  And he claims that he lost money as a result.  *Id*. pgs. 13-15, ¶ 36a.
     That is sufficient at this stage.

United States District Court
Northern District of California